D&O 2260029636
Tort 220029637
Rec'd Jan. 01, 2022
Risk Mgmt

## IN THE DISTRICT COURT OF LINCOLN COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| Rodney Alexander Topkov, individually,<br><br>Plaintiff,<br><br>v.<br><br>The State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County; Allan Grubb, in his individual capacity; John and/or Jane Doe Assistant District Attorneys, in and for Lincoln County, Nos. 1-5 in their individual capacities; the Lincoln County Board of County Commissioners, a political subdivision of the State of Oklahoma; Carl Munson, Marlon Miller and Lee Doolen, Lincoln County Commissions in their individual capacities; and John and/or Jane Doe District 23 Drug and Violent Crime Task Force Agents, Nos. 1-10 in their individual capacities,<br><br>Defendants. | **FILED**<br><br>DEC 22 2021<br><br>CINDY KIRBY, COURT CLERK<br>LINCOLN COUNTY, OKLAHOMA<br><br>CJ-21-143 |

### PETITION

COMES NOW the Plaintiff Rodney Alexander Topkov ("Mr. Topkov") for his claims for relief against the Defendants and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. The Plaintiff Mr. Topkov is an individual whose residence is located at 106287 South Quail Valley Drive, McCloud, Oklahoma, Lincoln County, Oklahoma (the "Property").

2. Upon information and belief, the Defendant Allan Grubb is an individual residing in Pottawatomie County, Oklahoma, and is the District Attorney of District 23, State of Oklahoma ("D.A. Grubb"), and engaged in the conduct complained of in this Petition in the course and scope of his employment as the District Attorney of District 23, State of Oklahoma. At the times material to this Petition, D.A. Grubb was a duly appointed agent authorized to enforce the laws of the State

1

**EXHIBIT 1**

of Oklahoma and acted under color of law at all times relevant to this action and was not acting as a prosecutor but participated as a law enforcement officer. D.A. Grubb is being sued in his individual capacity.

3.      On information and belief, the Defendants John and/or Jane Doe Nos. 1-5 are individuals residing in Lincoln County, Oklahoma, and are Assistant District Attorneys of District 23, State of Oklahoma (A.D.A.s John and/or Jane Doe) and engaged in the conduct complained of in this Petition in the course and scope of their employment as Assistant District Attorneys of District 23, State of Oklahoma. At the times material to this Petition, A.D.A. John and/or Jane Doe were duly appointed agents authorized to enforce the laws of the State of Oklahoma and acted under color of law at all times relevant to this action. A.D.A. John and/or Jane Doe were not acting as prosecutors but participated as law enforcement officers. They are sued in their individual capacities.

4.      On information and belief, the Defendant Carl Munson ("Munson") is an individual residing in Lincoln County, Oklahoma, is a Lincoln County Commissioner, and engaged in the conduct complained of in this Petition in the course and scope of his employment as a Lincoln County Commissioner. At the times material to this Petition, Munson was a duly appointed agent authorized to enforce the laws of the State of Oklahoma and acted under color of law at all times relevant to this action. Munson is sued in his individual capacity.

5.      On information and belief, the Defendant Marlon Miller ("Miller") is an individual residing in Lincoln County, Oklahoma, is a Lincoln County Commissioner, and engaged in the conduct complained of in this Petition in the course and scope of his employment as a Lincoln County Commissioner. At the times material to this Petition, Miller was a duly appointed agent

authorized to enforce the laws of the State of Oklahoma and acted under color of law at all times relevant to this action. Miller is sued in his individual capacity.

6. On information and belief, the Defendant Lee Doolen ("Doolen") is an individual residing in Lincoln County, Oklahoma, is a Lincoln County Commissioner, and engaged in the conduct complained of in this Petition in the course and scope of his employment as a Lincoln County Commissioner. At the times material to this Petition, Doolen was a duly appointed agent authorized to enforce the laws of the State of Oklahoma and acted under color of law at all times relevant to this action. Doolen is sued in his individual capacity.

7. The Lincoln County Board of County Commissioners is a political subdivision of the State of Oklahoma ("Board of Commissioners"). The Board of Commissioners is responsible for the policies, practices and customs of Lincoln County.

8. On information and belief, the John and/or Jane Doe District 23 Drug and Violent Crime Task Force Agents, Nos. 1-10, are individuals residing in Oklahoma, and are agents of the District 23 Drug and Violent Crime Task Force ("Task Force Agents John and/or Jane Doe Nos. 1-10") and engaged in the conduct complained of in this Petition in the course and scope of their employment as Task Force Agents. At the times material to this Petition, the Task Force Agents John and/or Jane Doe Nos. 1-10 were duly appointed agents authorized to enforce the laws of the State of Oklahoma and acted under color of law at all times relevant to this action. The Task Force Agents John and/or Jane Doe Nos. 1-10 are sued in their individual capacities.

9. The State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County, District Attorney of District 23, State of Oklahoma is an Oklahoma state agency.

10. Mr. Topkov gave notice of Governmental Tort Claim, pursuant to 51 O.S. § 156(A), on September 10, 2021, with the Board of County Commissioners of Lincoln County and the

Office of the Risk Management Administrator of the Office of Management and Enterprise Services for his claim against Allan Grubb District Attorney of the State of Oklahoma District 23 which district includes Lincoln County. No response was obtained from the recipients.

11. This action arises under the Constitution of the United States, 42 U.S.C. § 1983, and the laws of the State of Oklahoma.

12. The amount sought in damages is in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

13. Venue is proper pursuant to 12 O.S. § 131, 12 O.S. § 133, and 12 O.S. § 139.

## FACTUAL ALLEGATIONS

14. Mr. Topkov owns the real and personal property denominated the "Property".

15. On February 20, 2019, Mr. Topkov formed Earth Research Labs, LLC ("ERL").

16. Thereafter, Mr. Topkov, through ERL, sought and obtained the necessary permits, registrations and licensure to operate a legal marijuana commercial grow business on the McCloud real property.

17. ERL has continuously maintained the permits, registration and licensure necessary to operate its legal marijuana commercial grow business. Specifically:

    a. In September 2019, ERL obtained a three (3) years Sales Tax Permit (No. 167854869) from the Oklahoma Tax Commission. The permit is effective through September 12, 2022.

    b. In October 2020, OMMA issued a one-year Commercial Processor License to ERL (No. PAAA-4JHH-5HTY) set to expire on October 24, 2021.

    c. On November 10, 2020, OBNDD issued a Certificate of Registration to ERL (No. 67134) set to expire on November 31, 2021.

D&O 2260029636
Tort 220029637
Rec'd Jan. 01, 2022
Risk Mgmt

d. In March 2021, ERL began the process of obtaining and paying for its Certificate of Compliance for OMMA Businesses. It (1) completed and submitted the necessary paperwork to the Lincoln County Clerk, and (2) made a $2,025.00 payment to the Lincoln County Treasurer for commission fees and flood plain fees. After meeting with the Lincoln County Commissioners, the Lincoln County Clerk approved, signed, and filed of record, ERL's Certificate of Compliance for OMMA.

18. In July 2021, OMMA renewed and issued a Commercial Grower License to ERL (No. GAAA-4KTZ-YRRV). The license expires on July 13, 2022.

19. After obtaining the necessary permits, registrations and licensure to operate a legal marijuana commercial grow business on the McCloud real property, Mr. Topkov began building and operating his legal business. The business was fully equipped with irrigation, electricity, generators, equipment, vehicles, marijuana plants, seeds, grow supplies, trailers and all other necessary equipment to operate a successful business. At the time of the events in question, Mr. Topkov had cultivated a crop of marijuana containing special strains with sought-after genetics. Not only was the marijuana worth significant money, but the seeds from those plants would have sold for ten to twelve times more than regular marijuana seeds.

20. At all times during the operation of the business, the Plaintiff was in full compliance with the laws of the State of Oklahoma regarding operation of a legal marijuana commercial grow business.

21. On August 12, 2021, without any prior notice to the Plaintiff, and without obtaining a search warrant, the Defendants raided the Property.

22. More than a dozen police vehicles containing numerous officers dressed in military style tactical gear participated in the raid. Additionally, other individuals with commercial dump

trucks and trailers and heavy machinery, including earth moving machines, arrived on the real property.

23. D.A. Grubb personally participated in the raid along with several ADAs whose identity at this time are unknown.

24. On information and belief, the A.D.A.s John and/or Jane Doe Nos. 1-5 personally participated in the raid.

25. On information and belief, Munson, Miller and/or Doolen each personally participated in the raid.

26. District 23 Drug and Violent Task Force is an Oklahoma law enforcement agency operating under the direction of the District Attorney's Office. Said agency provides additional manpower and equipment to local law enforcement agencies. On information and belief, Task Force Agents John and/or Jane Doe Nos. 1-10 personally participated in the raid.

27. The Defendant law enforcement officers raided the property with assault rifles drawn and pointing directly at the Plaintiff's employees who were present on the real property during the raid.

28. The Plaintiff's employees immediately informed law enforcement officers that the marijuana commercial grow business had a valid OMMA license and OBNDD registration and was, thus, fully legal. Employees physically showed law enforcement officers ERL's OMMA license and informed them that Mr. Topkov, who was not present on the property at the time of the raid, was in possession of the digital OBNDD registration.

29. Notwithstanding the employees' continued protests and efforts to convince officers that the marijuana commercial grow business was legal, law enforcement officers continued to

D&O 2260029636
Tort 220029637
Rec'd Jan. 01, 2022
Risk Mgmt

threaten the employees while yelling that the operation was illegal because it did not have a valid OBNDD registration.

30. The Defendants proceeded to completely destroy the legally operating marijuana commercial grow business.

   a. Even before the earth movers were removed from their trailers, law enforcement began uprooting and cutting down marijuana plants.

   b. After unloading the machinery, law enforcement officers and other individuals participating with them, drove the equipment to the west side of the property crushing plants and irrigation systems along the way. Once to the west side of the property, law enforcement officers and other individuals participating with them, destroyed the farm's auto-flower/fresh frozen section – the heart of the commercial operation – which included plants in addition to infrastructure such as irrigation, other mechanical systems, stakes, t-posts, trellising system and other personal property. Law enforcement officers even utilized a tractor belonging to the Plaintiff to aid in the destruction.

31. Additionally, officers ordered the Plaintiff's employees to get on the ground and handcuffed them. One employee was kicked by law enforcement while cuffed and lying prone on the ground.

32. The Defendants confiscated the employees' cell phones and attempted to search the content of the phones.

33. Meanwhile, law enforcement officers raided Mr. Topkov's residence and the employees' living quarters located on the property. Officers went from room to room ransacking them and causing significant damage to the living areas including a broken window and destruction of the trailer's front door. Employees showed law enforcement the OBNDD registration on their

cell phone which Mr. Topkov sent to them to which law enforcement completely ignored and stated to the employees that the OBNDD registration was fake.

34. Mr. Topkov eventually reached D.A. Grubb at the scene by cellular telephone and informed him that the marijuana commercial grow business was wholly legal and begged him and the officers to stand down. Finally, law enforcement officers telephoned the OBNDD headquarters and confirmed that the marijuana commercial grow business had the requisite OBNDD registration.

35. The Defendants merely stated that they had made a mistake, loaded the equipment they had brought, and left.

36. Soon thereafter, local, state and national press began reporting the incident. News sources interviewed D.A. Grubb and OBNDD agent Mark Woodward who both admitted that the marijuana commercial grow business was at all times legal.

## COUNT I
### 42 U.S.C. § 1983 Claim for Violation of the Fourteenth Amendment Guarantee of Due Process

37. The Plaintiff repeats and realleges the preceding paragraphs of this Petition as if fully set forth in this Count.

38. The Fourth Amendment to the United States Constitution limits the government's power to seize property for purposes of forfeiture. *United States v. Good*, 510 U.S. 43, 49 (1993).

39. Additionally, the Fourteenth Amendment to the United States Constitution requires the government to provide notice and an opportunity to be heard prior to the seizure of real property, appurtenances to real property and certain personal property even though the property is suspected in the use of a drug offense. *Good*, 510 U.S. 43; *Fuentes v. Shevin*, 407 U.S. 67, 81

(1972). Where the government has lawfully seized property, reasonable notice must be given prior to final deprivation. *See Matthias v. Bingley*, 906 F.2d 1047, 1053 (5th Cir. 1990).

40. Individuals deprived of their Fourteenth Amendment rights to procedural due process may seek redress under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who deprives an individual of federal guaranteed rights "under color" of state law. *See* 42 U.S.C. § 1983.

41. The Oklahoma Uniform Controlled Dangerous Substances Act ("OUCDSA"), 63 O.S. § 2-503, provides in pertinent part:

> A. The following shall be subject to forfeiture:
>
> 1. All controlled dangerous substances and synthetic controlled substances which have been manufactured, distributed, dispensed, acquired, concealed or possessed in violation of the Uniform Controlled Dangerous Substances Act;
>
> 2. All raw materials, products and equipment of any kind ..., which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing or exporting, injecting, ingesting, inhaling, or otherwise introducing into the human body any controlled dangerous substance or synthetic controlled substance in violation of the provisions of the Uniform Controlled Dangerous Substances Act;
>
> ....
>
> 4. All conveyances ... which are used to transport, conceal, or cultivate for the purpose of distribution as defined in the Uniform Controlled Dangerous Substances Act ....
>
> ....
>
> 8. All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenance or improvement thereto, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of the Uniform Controlled Dangerous Substances Act which is punishable by imprisonment for more than one (1) year, except that no property right, title or interest shall be forfeited pursuant to this paragraph, by reason of any act or omission established by the owner thereof to have been committed or omitted without the knowledge or consent of that owner; ....
>
> ....
>
> D. All items forfeited in this section shall be forfeited under the procedures established in *Section 2-506* of this title....

(Emphasis added).

42. Pursuant to 63 O.S. § 506:

A. Any peace officer of this state shall seize the following property:

1. Any property described in subsection A of Section 2-503 of this title. Such property shall be held as evidence until a forfeiture has been declared or release ordered, except for property described in paragraphs 1, 2 and 3 of subsection A of Section 2-503 of this title, ....

....

B. Notice of seizure and intended forfeiture proceeding shall be filed in the office of the clerk of the district court for the county wherein such property is seized and shall be given all owners and parties in interest. Notwithstanding any other provision of law, no filing fees shall be assessed by the court clerk for the filing of any forfeiture action.

C. Notice shall be given by the agency seeking forfeiture according to one of the following methods:

1. Upon each owner or party in interest whose right, title or interest is of record in the Tax Commission, by mailing a copy of the notice by certified mail to the address as given upon the records of the Tax Commission;

2. Upon each owner or party in interest whose name and address is known to the attorney in the office of the agency prosecuting the action to recover unpaid fines, by mailing a copy of the notice by registered mail to the last-known address; or

3. Upon all other owners or interested parties, whose addresses are unknown, but who are believed to have an interest in the property, by one publication in a newspaper of general circulation in the county where the seizure was made.

D. Within forty-five (45) days after the mailing or publication of the notice, the owner of the property and any other party in interest or claimant may file a verified answer and claim to the property described in the notice of seizure and of the intended forfeiture proceeding.

E. If at the end of forty-five (45) days after the notice has been mailed or published there is no verified answer on file, the court shall hear evidence upon the fact of the unlawful use and shall order the property forfeited to the state, if such fact is proved....

F. If a verified answer is filed, the forfeiture proceeding shall be set for hearing....

43. The Defendants wholly failed to comply with the requirements of the OUDCSA, which requires that peace officers, suspecting violations of the OUDCSA, must give notice of an

intended seizure of suspected controlled dangerous substances and other property listed in § 2-503.

44. The actions of the Defendants as alleged in this Petition were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries and compensable damages.

45. The actions of the Defendants as alleged in this Petition were done intentionally, maliciously, wantonly, or oppressively, and/or with deliberate indifference with the intent to cause injury to the Plaintiff or in reckless disregard of the probability that they would cause injury to the Plaintiff. As a result, the Plaintiff is entitled to punitive damages.

46. The Defendants are not entitled to qualified immunity for the complained of conduct.

47. WHEREFORE, the Plaintiff prays for judgment, for compensatory and punitive damages, against the Defendants in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, together with interest and attorney fees, and all other necessary and proper relief.

## COUNT II
### 42 U.S.C. § 1983 Claim for Excessive Force

48. The Plaintiff repeats and realleges the preceding paragraphs of this Petition as if fully set forth in this Count.

49. The Plaintiff Mr. Topkov and ERL, the holder of the licenses and registrations, had not committed, nor were they in the act of committing a crime when the Defendants entered the Property without notice and an opportunity to be heard.

50. The Defendants, by taking and destroying the Plaintiff's property appurtenant to real property and his personal property affected a seizure. *See United States v. Jacobsen*, 466 U.S.

D&O 2260029636
Tort  220029637
Rec'd Jan. 01, 2022
Risk Mgmt

209 (1984). The manner in which the Defendants seized the Plaintiff's property unreasonably infringed on Plaintiff's possessory interests protected by the Fourth Amendment to the United States Constitution.

51. Under the Fourth Amendment to the United States Constitution, the Plaintiff had a right to be free from the excessive force to which his property was subject when law enforcement officials engaged in "unnecessarily destructive behavior" during the seizure of the Property. *See Mena v. City of Simi Valley*, 226 F.3d 1031 (9th Cir. 2000).

52. Individuals deprived of their Fourth Amendment rights may seek redress under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who deprives an individual of federal guaranteed rights "under color" of state law. *See* 42 U.S.C. § 1983.

53. The Defendants' improper actions as alleged in this Petition which resulted in the complete destruction of the Plaintiff's legal marijuana commercial grow business including appurtenances to real property and personal property used in the legal business violated the Plaintiff's rights not to be subjected to excessive force and the unnecessary destructive behavior in which the Defendants engaged in seizing the Plaintiff's personal property under the Fourth Amendment to the United States Constitution.

54. The actions of the Defendants as alleged in this Petition were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries and compensable damages.

55. The actions of the Defendants as alleged in this Petition were done intentionally, maliciously, wantonly, or oppressively, and/or with deliberate indifference with the intent to cause injury to the Plaintiff or in reckless disregard of the probability that they would cause injury to the Plaintiff. As a result, Plaintiff is entitled to punitive damages.

D&O 2260029636
Tort 220029637
Rec'd Jan. 01, 2022
Risk Mgmt

56.   The Defendants are not entitled to qualified immunity for the complained of conduct.

57.   WHEREFORE, the Plaintiff prays for judgment, for compensatory and punitive damages, against the Defendants in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, together with interest and attorney fees, and all other necessary and proper relief.

## COUNT III
## 42 U.S.C. § 1983 Monell Claim

58.   The Plaintiff repeats and realleges the preceding paragraphs of this Petition as if they were fully set out in this Count.

59.   The actions of the individual Defendants as alleged in this Petition were done under the authority of one or more interrelated de facto policies, practices and customs of the Defendant Board of Commissioners.

60.   The actions of the individual Defendants as alleged in this Petition were part and parcel of a widespread county policy, practice and custom which is further established by the involvement in, and ratification of, these actions by the county policy makers, Commissioners, Munson, Miller and Doolen.

61.   The Board of Commissioners ostensibly governs how county officials comply with State statutes and laws.

An OUCDSA provision, 63 O.S. § 2-509(C), states:

Whenever any peace officer in the state shall receive information that any species of [plants from which controlled dangerous substances in Schedules I and II may be derived] has been found growing on any private lands in the State of Oklahoma, the peace officer shall notify the sheriff and county commissions of the county wherein such plaints are found growing. Within five (5) days of receipt of such notice, the county commissioners shall notify the owner or person in possession of

such lands that such plants have been found growing on the lands and that the same must be destroyed or eradicated within fifteen (15) days ....

62. Despite full knowledge of the requirements of § 2-509(C), on information and belief, the Board of Commissioners' policy, practice and custom is to permit county employees to ignore requirements in the OUCDSA which require notice and an opportunity to be heard prior to summary seizure of property.

63. At all times material to the allegations contained in this Petition, the de facto policies, practices and customs of the Board of Commissioners led to the failure to afford the Plaintiff statutorily and constitutionally required pre-seizure notice and opportunity to be heard.

64. The policies, practices and/or customs and their failures as alleged in this Petition, are the proximate cause of the Plaintiff's injuries.

65. The policies, practices and/or customs as alleged in this Petition were maintained and implemented with deliberate indifference, and encouraged the individual Defendants to commit the acts alleged in this Petition against the Plaintiff.

66. WHEREFORE, the Plaintiff prays for judgment against the Defendants in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, together with interest and attorney fees, and all other necessary and proper relief.

### COUNT IV
### 42 U.S.C. § 1983 Claim for Violation of the Fourteenth Amendment Guarantee of Equal Protection

67. The Plaintiff repeats and realleges the preceding paragraphs of this Petition as if fully set forth in this Count.

68. The Fourteenth Amendment to the United States Constitution provides that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws."

Individuals deprived of their Fourteenth Amendment rights to equal protection may seek redress under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who deprives and individual of federal guaranteed rights "under color" of state law. *See* 42 U.S.C. § 1983.

69. One purpose of the equal protection clause of the Fourteenth Amendment is to "secure to every person with the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

70. A plaintiff claiming denial of equal protection rights may maintain a "class of one" equal protection claim where the plaintiff was treated differently than similarly situated persons, and there was no basis for that differential treatment.

71. To prove a claim of selective enforcement the defendant must demonstrate, in part, that there was an intentional and deliberate plan on the part of state officials to enforce the law selectively against him.

72. Although the Plaintiff is similarly situated to other owners of legal marijuana commercial grow business, the Defendants treated the Plaintiff differently because they assumed that the Plaintiff's business was minority owned and/or operated.

73. The Defendants' selective enforcement constitutes an abuse of power to apply the OUCDSA only against suspected minority owned and/or operated legal marijuana commercial grow businesses.

74. The actions of the Defendants as alleged in this Petition were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries and compensable damages.

75. The actions of the Defendants as alleged in this Petition were done intentionally, maliciously, wantonly, or oppressively, and/or with deliberate indifference with the intent to cause injury to the Plaintiff or in reckless disregard of the probability that they would cause injury to the Plaintiff. As a result, the Plaintiff is entitled to punitive damages.

76. The Defendants are not entitled to qualified immunity for the complained of conduct.

77. WHEREFORE, the Plaintiff prays for judgment, for compensatory and punitive damages, against the Defendants in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, together with interest and attorney fees, and all other necessary and proper relief.

## COUNT V
### Replevin

78. The Plaintiff repeats and realleges the preceding paragraphs in this Petition as if fully set forth in this Count.

79. The Plaintiff owns the appurtenances to real property and the personal property forfeited, seized and destroyed by the Defendants.

80. The Defendant The State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County, District Attorney of District 23, State of Oklahoma wrongfully seized, and summarily forfeited and destroyed legal medical marijuana plants, seeds, irrigation systems and electrical systems used to grow the legal medical marijuana plants.

81. Replevin lies to recover property which is held under a void process.

82. The Defendant The State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County, District Attorney of District 23, State of Oklahoma wrongfully seized,

and summarily forfeited and destroyed the appurtenances to real property and the personal property owned by the Plaintiff.

83. After seizing and destroying the appurtenances to real property and the personal property owned by the Plaintiff, the Defendant The State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County, District Attorney of District 23, State of Oklahoma admitted that the marijuana commercial grow business was legal and had a valid OBNDD registration. Mark Woodward of OBNDD further admitted that the marijuana commercial grow business was legal and had a valid OBNDD registration.

84. The Plaintiff is entitled to possession of the appurtenances to real property and the personal property forfeited, seized and destroyed.

85. Pursuant to 12 O.S. § 1580, "[i]n an action to recover possession of personal property, judgment for the plaintiff may be for ... the value thereof in case delivery cannot be had, and of damages for the detention."

86. The estimated value of the destroyed personal property is Ten Million Dollars ($10,000,000.00).

87. WHEREFORE, the Plaintiff prays for judgment against the Defendant The State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County, District Attorney of District 23, State of Oklahoma in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, together with interest and attorney fees, and all other necessary and proper relief.

## COUNT VI
### Declaratory Judgment

88. The Plaintiff repeats and realleges the preceding paragraphs in this Petition as if fully set forth in this Count.

89. As alleged in Count I, *supra.*, although the OUCDSA, 63 O.S. § 2-503, provides that certain property is subject to forfeiture if possessed in violation of the OUCDSA, § 2-503 is specifically subject to the procedures codified in § 2-506 which include pre-seizure notice and an opportunity to be heard.

90. To summarily forfeit and eradicate the Plaintiff's legally grown medical marijuana, the Defendants, instead, relied on 63 O.S. § 2-505(C), which states in pertinent part:

> Species of plants from which controlled substances in Schedules I or II of the Uniform Controlled Dangerous Substances Act may be derived which have been planted or cultivated in violation of the Uniform Controlled Dangerous Substances Act ... may be seized by peace officers, summarily forfeited and, in lieu of the eradication procedures contained in Section 2-509 of this title, promptly cut and burned where seized or destroyed by applications of herbicides....

91. Notwithstanding, 63 O.S. § 2-509(C)(1) provides:

> C. 1. Whenever any peace officer of the state shall receive information that any species of any such plants has been found growing on any private lands in the State of Oklahoma, the peace officer shall notify the sheriff and county commissioners of the county wherein such plants are found growing. Within five (5) days of receipt of such notice, the county commissioners shall notify the owner or person in possession of such lands that such plants have been found growing on the lands and that the same must be destroyed or eradicated within fifteen (15) days. When the fifteen (15) days have elapsed, the reporting peace officer shall cause an investigation to be made of the aforesaid lands, and if any such plants be found growing thereon, the county commissioners shall cause the same to be destroyed or eradicated by either cutting and burning or by applications of herbicides....

92. A justiciable controversy exists between the Plaintiff and the Defendants that is definite and concrete.

93. The controversy between the Plaintiff and the Defendants concerns legal rights and obligations among the parties and their interests are adverse to one another.

94. The controversy between the Plaintiff and the Defendants is real and substantial so as to be capable of a decision granting or denying specific relief of a conclusive nature.

95. The Court has authority to declare the rights and obligations of the Plaintiff and the Defendants.

96. The Plaintiff respectfully request the Court declare that 63 O.S. § 2-509(C)(1) applies such that the Defendants were required to give notice and an opportunity to be heard before seizing and eradicating Plaintiff's personal property.

97. WHEREFORE, the Plaintiff prays for a declaratory judgment that to the extent that the OUCDSA permits summary forfeiture, it is unconstitutional pursuant to the Fourteenth Amendment to the United States Constitution.

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

Respectfully Submitted,

Edward Goldman, OBA #3437
Thomas Goldman, OBA #19105
Robert Goldman, OBA #3439
GOLDMAN LAW PLLC
222 Northwest 13th Street
Oklahoma City, OK 73103
405/524-3403 Tel  405/523-2108 Fax
tom@goldmanlawokc.com
ed@goldmanlawokc.com
robert@goldmanlawokc.com
**Attorneys for the Plaintiff**

-and-

Donald E. Gies, III, OBA #33889
GIES LAW FIRM PLLC
1708 N. Gatewood Ave., Suite B
Oklahoma City, OK 73106
405/281-0276 Tel  405/421-0167 Fax
donald.gies@dg3law.com
**Attorney for the Plaintiff**