## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RODNEY ALEXANDER TOPKOV, and | ) | |
| EARTH RESEARCH LABS, LLC, an | ) | |
| Oklahoma limited liability company, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-40-SLP |
| | ) | |
| ALLAN GRUBB, DISTRICT ATTORNEY, | ) | |
| in and for LINCOLN COUNTY, in his | ) | |
| individual capacity; WILLIAM | ) | |
| WHEELER, in his individual capacity; | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court are the Motions for Summary Judgment of Defendants William Wheeler and Allan Grubb [Doc. Nos. 191 and 192]. The matters are fully briefed. *See* Responses [Doc. Nos. 202 and 203]; Replies [Doc. No. 208 and 209]; and Supplemental Briefs [Doc. Nos. 247, 248 and 249].[1] For the reasons that follow, the Motions are GRANTED based on the Court's findings that Defendants are entitled to qualified immunity.

## I.    Introduction

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging a violation of their rights under the Fourth Amendment to the United States Constitution. Plaintiffs claim that

---

[1] Citations to the parties' briefing submissions, including exhibits and deposition testimony, reference the Court's ECF pagination. The parties' briefing submissions as to each of the Defendants' Motions are virtually identical. For ease of reference, the Court does not make duplicative references where the same arguments are made or the identical evidence is cited.

their marijuana grow operation, located in Lincoln County, Oklahoma, suffered extensive damage as a result of the execution of a search warrant by Defendants, law-enforcement officials serving Lincoln County, Oklahoma. Plaintiffs claim that law enforcement officers who, worked under Defendants' direction and executed the search warrant, engaged in unreasonably destructive behavior.

The grow operation was unlawful under federal law.[2] Without certain registrations required under Oklahoma law, the grow operation would also have been unlawful under state law.[3] The search warrant issued based on incorrect information that the grow operation did not have all of its proper state-law registrations.

Defendants, sued in their individual capacities, move for summary judgment on grounds of qualified immunity. They argue that they did not personally participate in any of the conduct alleged to have violated Plaintiffs' Fourth Amendment rights. Additionally, Defendants argue that no clearly established law exists as to the factual circumstances at issue that form the basis of Plaintiffs' Fourth Amendment claim.

---

[2] *See, e.g., Bartch v. Barch*, 111 F.4th 1043, 1061 (10th Cir. 2024) (The Controlled Substances Act, 21 U.S.C. §§ 801-904, "fully applies in states that have de-criminalized marijuana.").

[3] "Like the Controlled Substances Act, Oklahoma's Uniform Controlled Substances Act makes it unlawful to distribute, dispense, manufacture, or possess marijuana." *United States v. Stacy*, 156 F.4th 994, 1001 (10th Cir. 2025) (citing Okla. Stat. tit. 63, § 2-401(A)(1), (C)(2) (2019); *id*. § 2-402(A) (2019); *id*. § 2-204 (2019) (including "marihuana" as a Schedule I controlled substance)). But Oklahoma has legalized medical marijuana and passed the Oklahoma Medical Marijuana and Patient Protection Act "to regulate the legalized use, manufacture, and distribution of medical marijuana." *Id*. (citing Okla. Stat. tit. 63, § 427.1 et seq. (2019)).

II.    **The Fourth Amendment Claim Raised by the First Amended Complaint**

The Court finds it necessary to begin with a precise delineation of the single claim for relief alleged in Plaintiffs' First Amended Complaint [Doc. No. 50] (FAC), the operative pleading in this action. The Court does so because the summary judgment briefing submissions of the parties call into question the scope of the issues properly before the Court. Additionally, Court-directed supplemental briefing submitted by the parties has further clarified the parameters of the single claim at issue.

The FAC is brought by both Plaintiffs, Rodney Alexander Topkov (Mr. Topkov) and Earth Research Labs, LLC (ERL). The FAC alleges a single claim for relief against Defendants under 42 U.S.C. § 1983 for "Excessive Force" in violation of the Fourth Amendment to the United States Constitution. *See* FAC at 12-16. The Fourth Amendment claim is premised on Defendants' alleged "unreasonably destructive behavior" in the course of executing the search warrant. *Id*. at 12, ¶ 71. The claim encompasses both the alleged destruction of real and personal property and alleged use of excessive force against employees of ERL. *Id*. at 14-15, ¶ 78.

After filing the FAC, Plaintiffs also filed a related lawsuit in state court. Defendants then removed the lawsuit to this Court but the lawsuit was subsequently remanded to state court. *See Earth Research Labs, LLC v. State of Oklahoma ex rel. Allan Grubb*, Case No. CIV-23-520-SLP (W.D. Okla.), Order [Doc. No. 14]. In that lawsuit, Plaintiffs sought a declaratory judgment regarding the applicability of two, purportedly conflicting, Oklahoma statutes addressing procedures governing eradication of species of plants from

which controlled dangerous substances, to include marijuana, are derived.[4]  The Court mentions this lawsuit because in responding to Defendants' summary judgment motions, Plaintiffs attempt to include arguments regarding the applicability of these statutes.  But the sole claim for relief in Plaintiff's FAC is Plaintiff's Fourth Amendment claim.[5]

### A.     Judgment in Favor of Defendants is Proper as to any Claim Brought by ERL

In their supplemental briefing, Plaintiffs concede that ERL cannot bring any claim under § 1983 and that only Mr. Topkov is proceeding in this action.  *See* Doc. No. 249 at 3 ("To the extent that both Plaintiffs pleaded violations of the Fourth Amendment, Plaintiffs clarify that only Mr. Topkov seeks such relief.").[6]  Accordingly, the Court finds judgment as a matter of law should be entered in favor of Defendants as to ERL's sole claim for relief under the Fourth Amendment.[7]

### B.     Mr. Topkov's Fourth Amendment Claim

The Court's remaining analysis focuses on Mr. Topkov's Fourth Amendment claim.  In Mr. Topkov's responses to Defendants' summary judgment motions, he appears to add

---

[4] *See* Okla. Stat. tit. 63, §§ 2-505 and 2-509.

[5] Plaintiffs' state law action remains pending.  *See Earth Research Labs, LLC v. State of Oklahoma ex rel. Allan Grubb*, Case No. CJ-2023-75, District Court of Lincoln County, State of Oklahoma (docket available at www.oscn.net).

[6] The record establishes that ERL held the license for the grow operation.  Mr. Topkov is the sole member of ERL.

[7] As the Court addressed in its Order [Doc. No. 246] directing supplemental briefing, ERL, as an unincorporated entity, is not a "person" entitled to sue under § 1983.  *Id*. at 1 (citing *Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv*., 868 F.3d 1199, 1206 n. 5 (10th Cir. 2017); *see also Christians in the Workplace Networking Grp. v. Nat'l Tech, & Eng'g Sols. of Sandia, LLC*, No. 24-2072, 2025 WL 2114295 at *7 (10th Cir. July 29, 2025)).

new theories of liability beyond the scope of that alleged in the FAC.  Instead of focusing on the alleged unreasonably destructive behavior utilized in the course of the search, Mr. Topkov addresses in his responses issues involving: (1) the scope of the warrant, i.e. that items were seized that were not enumerated in the warrant; and (2) Defendants' alleged failure to "knock and announce."  Defendants argue in their replies that these are new theories not included in the FAC and that Mr. Topkov impermissibly attempts to broaden his sole claim for relief.[8]

Under Tenth Circuit law, new allegations in response to a summary judgment motion may be interpreted as a "potential request to amend the complaint."  *Adams v. C3 Pipeline Constr. Inc*., 30 F.4th 943, 971 (10th Cir. 2021) (quoting *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003)).  But this rule "does not preclude the moving party from notice and an opportunity to be heard on whether an amendment should be permitted."  *Martinez*, 347 F.3d at 1212.  "After all, a request to amend may be denied where the new theory would prejudice the moving party."  *Id*.  If amendment were proper, "the federal rules contemplate a formal amended complaint, an amended answer and inclusion of the issues in the initial pretrial report and pretrial order."  *Id*.

Here, amendment would not be proper.  Plaintiffs did not identify these issues until the filing of their response briefs at a time when only approximately two weeks remained

---

[8] Because Plaintiffs attempt to add new claims, Plaintiffs' responses make it difficult for the Court to discern which arguments Plaintiffs assert in response to Defendants' summary judgment motions and which arguments are focused on these new claims.  Indeed, Plaintiffs do not dispute the majority of Defendants' facts and largely ignore Defendants' legal arguments, instead giving primary focus to the attempted new claims.

before expiration of the discovery deadline. Moreover, Plaintiffs have never sought leave to further amend to add these claims. *See Fuqua v. Lindsey Mgmt. Co.,* 321 F. App'x 732, 734-45 (10th Cir. 2009) (no abuse of discretion by trial court in failing to permit plaintiffs to amend complaint based on arguments made in response to summary judgment motion because they did not provide district court with adequate notice that they wanted to do so; they never asked that their response to summary judgment be treated as a request to amend and they never filed an amended complaint). *Shyers v. Metro. Prop. & Cas. Ins. Co*., No. 24-5036, 2025 WL 2088721, at *10 (10th Cir. July 25, 2025) (recognizing that Tenth Circuit "cases interpret the inclusion of new allegations in a response to a motion for summary judgment, as a potential request to amend the complaint" but that an "expansive view of these cases would render pleading requirements and litigation deadlines meaningless" and finding it was harmless to deny leave to amend where the plaintiff has already amended his complaint once and offered only a weak justification for the delay in seeking amendment which strongly suggested that plaintiff was attempting to "salvage a lost case").

Plaintiffs have failed to take any affirmative action to secure further amendment of the FAC. And Plaintiffs have failed to provide any reason for their delay in seeking amendment. Under these circumstances, further amendment to add additional claims is unwarranted. Accordingly, the Court limits its analysis to the sole Fourth Amendment claim alleged – whether Defendants engaged in unnecessarily destructive behavior in executing the search warrant.

## III.    Governing Standard

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors*, 157 F.4th 1235, 1248 (10th Cir. 2025). An issue of material fact is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.    Undisputed Facts

Defendant William Wheeler (Wheeler) is a former District Attorney Investigator for Lincoln County, Oklahoma (Wheeler). Defendant Allan Grubb (Grubb) served as the District Attorney of Lincoln County, Oklahoma at all times relevant to Mr. Topkov's Fourth Amendment claim.[9]

In August 2021, Wheeler received information about a possible unlawful marijuana grow operation in Lincoln County, Oklahoma, and went to observe this operation in a rural area located at 106287 South Quail Valley Road. The property was owned by Mr. Topkov.

---

[9] Grubb has not raised the issue of prosecutorial immunity in this action. Plaintiffs have alleged that Grubb "was not acting as a prosecutor, but participated as a law enforcement officer." FAC at 1-2, ¶ 3.

In furtherance of his investigation, on August 11, 2021, Wheeler prepared and obtained a search warrant that led to the search at issue.  The search warrant was issued based, in part, on statements in Wheeler's Affidavit for Search Warrant that the Oklahoma Bureau of Narcotics (OBN) "could not show any records at all where there was application submitted or granted from OBN to grow or process" at the cited address.  *See* Doc. No. 192-1 at 12-13, ¶ 9.[10]

Wheeler then recruited officers from various law enforcement agencies to assist with the execution of the search warrant and the eradication of the marijuana.[11]  On the morning of August 12, 2021, Wheeler conducted a meeting to discuss the execution of the

_____

[10] It is undisputed that the OBN provided this information to Wheeler.  *See* Wheeler Stmt. [Doc. No. 192-1], ¶ 4; *see also* McGuire Stmt. [Doc. No. 192-3], ¶ 2.  Plaintiffs do not allege that Wheeler engaged in any unconstitutional or other wrongful conduct in relying on the information provided to him by the OBN when he submitted his Affidavit for Search Warrant.  Nor do Plaintiffs challenge the truthfulness of the statements in Wheeler's Affidavit for Search Warrant.  Instead, without development, Plaintiffs argue that Wheeler should have advised the judge approving the search warrant of the provisions of Okla. Stat. tit. 63, § 2-509.  *See* Doc. Nos. 202 and 203 at 7; Response to Statement of Fact No. 4.  The statutory provision cited addresses eradication procedures for "[a]ll species of plants from which controlled substances . . . may be derived."  *See id.*, § 2-509(A).  Plaintiffs do not address why Wheeler was required to advise the judge of this statutory provision and otherwise make no showing that the Affidavit for Search Warrant was not supported by probable cause.

[11] As to the eradication component of the search and seizure, it is Wheeler's understanding that Oklahoma law "authorizes the summary eradication of Schedule 1 substances (including marijuana) without prior notice to the landowner."  *See* Wheeler Stmt. [Doc. No. 192-1] at 2, ¶ 13.  As the relevant Oklahoma law, Wheeler cites Okla. Stat. tit. 63, § 2-505(C) which provides for summary forfeiture of "[s]pecies of plants from which controlled substances in Schedules I or II of the Uniform Controlled Dangerous Substances Act may be derived which have been planted or cultivated in violation of the Uniform Controlled Dangerous Substances Act . . . ."  The statute expressly states that the plants may be "promptly cut and burned where seized" and that such action may be taken "in lieu of the eradication procedures contained in Section 2-509 of this title[.]"  Okla. Stat. tit. 63, § 2-505(C).  As discussed *supra*, Plaintiffs have filed a separate action, pending in Oklahoma state court, seeking a declaration as to the allegedly conflicting provisions of the Oklahoma statues governing eradication of such species of plants.

search with the participating officers. A total of approximately 13 officers, including Wheeler, participated in the search.[12] At the meeting Wheeler reviewed Mr. Topkov's prior criminal history to include felony drug charges, felon in possession of firearms and ammunition, possession of a machine gun, and reckless driving. *See* Wheeler Stmt., ¶ 39.

The search began that same morning at around 7:30 a.m. Wheeler and the other officers entered the property through the front gate.[13]

The County Commissioner was present at the property and there to direct county workers to assist with burying and burning the marijuana.[14] The County Commissioner brought heavy machinery, including bulldozers and dump trucks to the property. According to Wheeler, "[i]t is standard operating procedure for heavy machinery to be present during these types of operations" to "expedite[] the summary forfeiture and destruction of illegal marijuana" when "dealing with [a] large marijuana farm[]." Wheeler Stmt. [Doc. No. 192-1] at 6, ¶ 31. The law enforcement officers were responsible for eradicating the marijuana plants, i.e., pulling plants out of pots or cutting plants. *See* Wheeler Dep. [Doc. No. 202-4] at 24.

---

[12] No other law enforcement officers involved in the execution of the search remain in this action. The Amended Complaint named "John/Jane Doe Members of the District 23 Drug Task Force" but those Doe Defendants were dismissed upon a show cause order issued by the Court. *See* Orders [Doc. No. 59 and 60].

[13] During the initial clearing and securing of the property, Grubb waited outside the perimeter of the property. See Wheeler Stmt. [Doc. No. 192-1] at 5, ¶ 25; *see also* Grubb Stmt. [Doc. No. 203-5], at 1 ¶ 6.

[14] Plaintiffs initially sued individual Commissioners and the Board of County Commissioners of Lincoln County. The Court granted the Motion to Dismiss filed by these Defendants on grounds the allegations against them were too conclusory. *See* Order [Doc. No. 31].

Mr. Topkov was in California on the day of the search.  Present were four employees of Mr. Topkov and/or ERL.  Initially, the law enforcement officers conducted a clearing and securing of the property by entering the travel trailers and shipping containers on the property.[15]  The employees, including Fernando Guifarro, the property manager, were detained during this phase of the search.  Neither Defendant Wheeler nor Defendant Grubb was involved in the detention of these individuals.

The initial clearing and securing of the property was complete by approximately 7:52 a.m.  At that time, the detained individuals were released from handcuffs.[16]

As execution of the search warrant continued and marijuana was being eradicated, Defendant Wheeler and Mr. Guifarro walked the property together.  Mr. Guifarro told Wheeler that he believed the operation was lawful.  But Wheeler told Mr. Guifarro that no proper OBN registration existed for the property.  In response, Mr. Guifarro got in touch with Mr. Topkov and Mr. Topkov then sent an image of the OBN registration on his cell phone.  The property manager, Mr. Guifarro, told Wheeler that he thought the image sent by Mr. Topkov looked suspicious.  Guifarro Dep. [Doc. No. 192-2] at 34.  Defendant Grubb also believed the image of the registration was "inauthentic based on what [he] could observe."  Grubb Stmt. [Doc. No. 191-5] at 3, ¶ 34.

---

[15] Mr. Topkov states there was also a cabin on the property where employees resided.  *See* Topkov Decl. [Doc. No. 202-2] at 3, ¶ 11.

[16] Mr. Guifarro testified that he was never handcuffed but he was detained.  *See* Guifarro Dep. [Doc. No. 192-2] at 27.

Nonetheless, Wheeler stopped the search and eradication efforts at that time and called OBN who advised Wheeler that the registration appeared fraudulent.[17] Wheeler then ordered the search to continue. Approximately ten minutes passed when OBN then called Wheeler back and advised Wheeler that a registration for the property had been located. Upon receiving this information, Wheeler immediately stopped the operation. At approximately 10:02 a.m., Defendants and the other the law enforcement officers exited the property.

Mr. Topkov describes his marijuana grow operation as having been equipped with "irrigation, electricity, generators, equipment, vehicles, marijuana plants, seeds, grow supplies, and all other necessary equipment to operate a successful marijuana grow business." Topkov Decl. [Doc. No. 203-2] at 2, ¶ 10. He states that his "marijuana-related property" was destroyed during the execution of the search warrant. *Id*. at 3, ¶¶ 17-18.[18]

Mr. Topkov also states that earth moving machines used during the search dug ditches on his property and destroyed the above ground and below ground irrigation systems and electrical systems to his farm. *Id*., ¶ 17. Additionally, Mr. Topkov states that

---

[17] Of course, this advice was certainly not inconsistent with the previous information provided to Wheeler by the OBN that no registration existed for the property.

[18] Mr. Topkov does not seek damages arising from the destruction of the marijuana itself. *See, e.g*. Doc. No. 220 at 2-3 ("Plaintiffs agree that they cannot seek damages for the destruction of marijuana or for lost profits from the marijuana in this action."); Doc. No. 70 at 1 ("Plaintiffs do not seek to recover for 'damage to the marijuana' or 'the lost profits arising from the destruction of their marijuana' as marijuana is illegal at the federal level."); Doc. No. 249 at 3 ("ERL owned the requisite licenses, permits and, consequently, the marijuana that Defendants destroyed, which Plaintiffs are not seeking damages for here."). Mr. Topkov does, however, seek damages for injury to the non-marijuana property, including both property integral to the grow operation and other property.

law enforcement used his tractor during the search without his permission.  According to Mr. Topkov, one of the tires to the tractor was ruined.  *Id*. at 4, ¶ 19.

Mr. Topkov further describes a significant amount of other personal property alleged to have been damaged.  He states that as a result of the search, his residence was ransacked to include the following: (1) destruction of the front door; (2) broken cabinets; (3) damaged furniture; (4) a ripped up window screen; (5) a broken window; (6) broken dishes and glassware; (7) clothes thrown all over the place; (8) drawers pulled out and belongings rifled through; (9) pictures thrown on the floor; (10) pots and pans thrown on the floor; (11) a mattress torn from a bed; (12) the bed frame damaged; and (13) furniture and household items moved in an unnecessary and destructive way.  *Id*. at 3-4, ¶ 18.[19]

Defendant Wheeler provides a statement that he did not personally damage or destroy, nor did he observe anyone damaging or destroying: (1) Mr. Topkov's non-marijuana personal property (e.g., irrigation equipment, soil, fertilizer, trellising, T-Posts, above-ground irrigation system, pots, doors, windows, cabinets, below-ground irrigation system of "Fresh Frozen" section of Plaintiff's marijuana farm); or (2) Mr. Topkov's Kubota tractor.  *See* Wheeler Stmt. [Doc. No. 192-1] at 6-7, ¶¶ 33-35, 36, 38.  Nor did Wheeler instruct any law enforcement officer to destroy any of Plaintiff's non-marijuana property.  *Id*. at 6, ¶ 34.  Wheeler was not present to observe the breach of the door to Mr. Topkov's trailer.  *Id*. at 5, ¶ 22.

---

[19] The parties treat this other personal property as unrelated to the marijuana grow operation.

Grubb also provides a statement that he did not participate in the destruction of any property nor did he instruct anyone to destroy any of Mr. Topkov's personal property. Grubb Stmt. [Doc. No. 191-5] at 2, ¶¶ 14, 18. Other than marijuana plants, Grubb did not observe any of Mr. Topkov's property being destroyed or damaged. *Id.*; *see also id.* at 3, ¶ 19 (stating that Grubb did not observe the breaking in or kicking of any door but did observe damage to one door "after the fact"); *id.* at 3-4, ¶¶ 23, 29, 30. According to Grubb, he was present "at the summary forfeiture and destruction operation . . . to gain a better understanding for law enforcement procedure in practice, such that [he] could more effectively communicate the nature of these operations in court." *Id.*, at 4, ¶ 36.

Defendants also submit statements from six law enforcement officers who participated in the execution of the search warrant. *See* Doc. Nos. 192-6, 192-7, 192-8, 192-9, 192-10, and 192-11. None of these officers damaged or destroyed any of Mr. Topkov's property, witnessed Defendants direct any law enforcement officer to "damage property without cause," or witness any officer "needlessly or maliciously damage or destroy any property." *Id.*[20]

Other facts are addressed below, as relevant, in the Court's discussion of Mr. Topkov's Fourth Amendment claim and Defendants' assertion of qualified immunity.

---

[20] Some of these officers did witness or were aware of damage to the door to Mr. Topkov's trailer, which was locked and had to be opened using "a Halligan tool." *See, e.g.*, Doc. No. 192-6, ¶ 3; Doc. No. 192-10, ¶ 7.

V.    **Discussion**

As set forth, Defendants move for summary judgment on grounds of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests – [1] the need to hold public officials accountable when they exercise power irresponsibly and [2] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quotation omitted).

"When a defendant asserts qualified immunity at the summary-judgment stage, the burden shifts to the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Alcala v. Ortega*, 128 F.4th 1298, 1306 (10th Cir. 2025) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "The plaintiff must satisfy both prongs to overcome a qualified immunity defense." *Id.* (quoting *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 757–58 (10th Cir. 2021)).

For the reasons that follow, Mr. Topkov fails to meet his burden as to either prong of the qualified immunity defense. Construing the facts in the light most favorable to Mr. Topkov, no reasonable juror could conclude that Defendants violated Mr. Topkov's Fourth Amendment rights. The record shows that, as to a significant amount of the alleged destruction of property, Defendants did not personally participate in its destruction nor is

14

there evidence sufficient to demonstrate they should be held liable in any supervisory capacity. Additionally, Mr. Topkov has failed to show that any law enforcement officer, including Defendants, engaged in any conduct that would demonstrate an excessive search took place. And Mr. Topkov's evidence of property damage is largely speculative. Moreover, Mr. Topkov has not identified any clearly established federal law pertinent to the circumstances presented by this case.

### A. Mr. Topkov has not Established a Violation of His Fourth Amendment Rights by Defendants

"The Fourth Amendment provides individuals with security in their homes, and a search warrant, even one properly supported and properly issued, is not a license to breach that security with impunity." *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997). Officers executing search warrants, therefore, are bound by the Fourth Amendment's overarching requirement of reasonableness. *Id*. ("Although the Constitution does not specifically address how an officer should execute a search warrant, a warrant that is reasonably executed will withstand constitutional scrutiny.").

To determine whether a particular search or seizure comports with reasonableness, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests, against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Such an inquiry requires consideration of whether "the totality of the circumstances justified a particular sort of search or seizure." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).

15

"[S]o long as the officer's conduct remains within the boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution." *Lawmaster*, 125 F.3d at 1349. And such details may include "damaging property, detaining residents, or taking action necessary to protect the searching officers." *Id*. But an officer is "limited to conduct that is reasonably necessary to effectuate the warrant's purpose." *Id*. Thus, "[e]xcessive or unnecessary destruction or property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful[.]" *United States v. Ramirez*, 523 U.S. 65, 71 (1998).

To hold a defendant liable under § 1983 a plaintiff must show that the defendant personally participated in the violation of the plaintiff's constitutional rights. *See Griffith v. El Paso Cnty., Colo.*, 129 F.4th 790, 822 (10th Cir. 2025) ("It is well settled that a plaintiff must prove each defendant personally participated in a constitutional violation."). Moreover, it is well-established that "[s]ection 1983 does not authorize respondeat superior liability for a supervisor based solely on the actions of his subordinates." *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019). "Instead, supervisory liability may be imposed under § 1983 only when a supervisor's subordinates violated the Constitution and the plaintiff can demonstrate an affirmative link between the supervisor and the violation, which includes showing (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Estate of George v. City of Rifle, Colo.*, 85 F.4th 1300, 1320-21 (10th Cir. 2023) (internal quotation marks and citations omitted)).

In moving for summary judgment, Defendants focus on their lack of personal involvement in any: (1) use of force on Mr. Topkov's employees; (2) the breaking of the

door to Mr. Topkov's residence; (3) the "ransacking" of his residence; (4) the damage to his tractor; and (5) the destruction of other non-marijuana personal property. The Court addresses each of this described conduct in turn.

### Use of Force on Mr. Topkov's and/or ERL's Employees

Wheeler and Grubb argue that they did not personally participate in any use of force on Mr. Topkov's and/or ERL's employees and did not violate the Fourth Amendment by deciding to use a SWAT team or allowing the officers to wear tactical gear and carry rifles during the execution of the search warrant.

Fundamentally, Plaintiff cannot establish a violation of his constitutional rights based on this alleged conduct because such conduct was directed at employees and not at Mr. Topkov himself. *See, e.g., Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (It is a "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."). Indeed, it is undisputed that Mr. Topkov was not present on the property at the time of the search and therefore, such conduct could not have been directed at him.[21] The Court, therefore, finds such conduct does not give rise to any violation of Mr. Topkov's Fourth Amendment rights.

Mr. Topkov nonetheless maintains that this conduct should be considered as part of the "totality of the circumstances" in the determination of the reasonableness of the search

---

[21] In his Supplemental Brief [Doc. No. 249] Mr. Topkov concedes that "he does not have standing to seek damages for the personal injuries suffered by employees at the hand of Defendants[.]" *Id.* at 4.

and seizure.  *See* Doc. No. 249 at 5-7.  But Mr. Topkov cites no case law that would support inclusion of such conduct where, as here, the person claiming injury was not present.

Even if such conduct were considered, Mr. Topkov fails to dispute that neither Wheeler nor Grubb personally directed the use of force against any employees present at the property or themselves used force against any of the employees.  And Mr. Topkov otherwise fails to demonstrate that the *decision* to deploy a SWAT team, under the factual circumstances of this case, violated his Fourth Amendment rights.  *See Harte v. Bd. of Comm'rs*, 864 F.3d 1154, 1164 (10th Cir. 2017) (whether the decision to use a SWAT team amounts to excessive force is reviewed by "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion").  The search was of a marijuana grow operation thought to be illegal, with numerous individuals working and/or living at the grow site and an owner with a prior criminal history.  Additionally, it is undisputed that "[a]fter the area to be searched was secured, the officers removed their tactical gear[.]" Wheeler Stmt. [Doc. No. 192-1] at 5, ¶ 23.[22]  The Court finds, on the record presented, that use of the SWAT team was not excessive and did not deem the search and seizure unreasonable.[23]

---

[22] Mr. Topkov acknowledges that "illegal grows may often have armed guards and numerous firearms on site" but he contends Defendants did not observe this to be the case "with regard to Mr. Topkov's operation before entering the property."  Pls.' Resp. [Doc. No. 202] at 12-13, ¶ 57. Mr. Topkov fails to demonstrate legally or factually, that merely because Defendants did not make such an observation prior to entering the property that use of the SWAT team was excessive.

[23] Mr. Topkov has not cited any clearly established law on this point.  *See, e.g., Tallie v. Pittsburg Police Dep't*, No. 22-3152-JWL-JPO, 2022 WL 17555403 at *4 (D. Kan. Dec. 9, 2022) (finding that there are "no cases in which the Tenth Circuit has found that deployment of a SWAT team to

### *Breaking the Door of Mr. Topkov's Residence*

Mr. Topkov has come forward with no evidence to show that either Wheeler or Grubb personally participated in the breaking of the door to his residence. The undisputed record shows that they did not engage in any such conduct, nor did they direct that it be done. *See, e.g., Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008) ("Absent allegations of personal direction or actual knowledge and acquiescence," no "affirmative link" exists for imposition of supervisory liability). Moreover, the record shows that Mr. Topkov had the only key to the residence and, therefore, it was necessary to break the door to gain entry. *See* Guifarro Dep. [Doc. No. 192-2] at 38-39; Bray Dep. [Doc. No. 192-4] at 4. Nothing about the breaking of the door demonstrates a Fourth Amendment violation by Defendants.

### *Ransacking Mr. Topkov's Residence*

Similarly, Mr. Topkov has come forward with no evidence to show that Defendants Wheeler and/or Grubb ransacked his residence, or directed others to ransack his residence. And the record otherwise affirmatively refutes the same. Thus, such conduct cannot form the basis of any Fourth Amendment violation by Defendants.

---

execute a search warrant amounted to excessive force" and further noting that "[t]o the contrary, the Tenth Circuit has intimated that even a blanket policy of sending a SWAT team to execute warrants in all narcotics cases may not offend the Fourth Amendment in the absence of evidence that the decisionmaker 'knew the team would use excessive force, intended to cause harm, or instructed the team to use excessive force" (internal quotation marks and citation omitted)).

### *Damage to Mr. Topkov's Tractor*

The record bears out the same as to any damage to the tire on Mr. Topkov's tractor. It is undisputed that neither Wheeler nor Grubb damaged the tractor, witnessed any other law enforcement officer damaging the tractor or directed any law enforcement officer to utilize the tractor in any way.

### *Damage to Other Personal Property Used for the Marijuana Grow Operation*

What remains is damage to other property integral to the marijuana grow operation, exclusive of the marijuana, itself. Mr. Topkov submits no evidence that Wheeler or Grubb themselves destroyed any of this property or directed that any of this property be destroyed. Instead, he seeks to hold them liable under a theory of supervisory liability.

Mr. Topkov argues that even if, under Oklahoma law, Defendants were authorized to summarily forfeit the marijuana plants, they were not authorized to summarily forfeit property used as part of the grow operation. According to Mr. Topkov, Defendants were required to hold such property pending forfeiture proceedings. *See, e.g.*, Pls.' Resp. [Doc. No. 202] at 21 n. 3. Mr. Topkov makes this argument in the context of challenging the scope of the warrant. As set forth, such a claim has not been pled in this action. Even so, "the seizure of weapons, equipment that could be used to grow marijuana, or records [does not] present a constitutional problem" as "[t]he police may search for and seize contraband, and evidence, instrumentalities, and fruits of crime." *United States v. Popham*, 382 F. Supp.2d 942, 953 (E.D. Mich. 2005) (citing *Warden v. Hayden*, 387 U.S. 294, 301 (1967) (additional citations omitted)).

Mr. Topkov appears to conflate the Fifth Amendment's due process protections concerning property rights (a claim not asserted in this litigation) with the Fourth Amendment's protections against unreasonable searches and seizures.[24]  The sole issue before this Court is whether Defendants acted unreasonably in the execution of the search warrant.  The determination of that issue is not dependent on any issue of notice and an opportunity to be heard that may have been (or may not have been) required under Oklahoma law as to the forfeiture of the property that was integral to the marijuana grow operation.[25]

Under the Fourth Amendment, it has long been recognized that property (regardless of its nature) may get destroyed in the course of executing a search warrant.  *See, e.g., Dalia v. United States*, 441 U.S. 238, 258 (1979) ("[O]fficers executing search warrants on occasion must damage property in order to perform their duty.").  As the Tenth Circuit has instructed, the relationship between the damage alleged and the object of the search must be considered in determining whether a particular search was excessive or unnecessary so as to give rise to a constitutional violation.  *Lawmaster*, 125 F.3d at 1349-50 (10th Cir. 1997) (finding that the officers' actions – leaving the plaintiff's gun in a dog's water bowl

---

[24] Mr. Topkov was denied leave to amend to assert a claim based on a violation of his due process rights.  *See* Order [Doc. No. 49].  To the extent he attempts to reassert such claims in responding to Defendants' summary judgment briefing, such attempt is improper.

[25] That is not to say that Mr. Topkov lacks a possessory interest in the subject property for purposes of his entitlement to Fourth Amendment protections.  *See, e.g., Anderton v. Texas Parks & Wildlife Dep't*, No. 3:13-CV-01641-N, 2014 WL 11281086 at *11 (N.D. Tex. Feb. 14, 2014) ("[I]ndividuals can have protected possessory interests in contraband for Fourth Amendment purposes, even though individuals have no property right in contraband materials." (internal quotation marks and citations omitted)).

and spreading cigarette and cigar ashes throughout his home and bedding – were not "reasonably necessary to carry out the warrant's purpose to search for and seize a machine gun and parts."). Thus, "[w]hat is reasonably necessary to execute a search warrant tracks the nature and quantity of the evidence to be seized." *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020).

Defendants argue that they did not personally participate in any *excessive* damage to property, i.e., damage beyond that necessary to carry out the warrant's purpose. *See, e.g.,* Doc. No. 192 at 32-33. According to Defendants, "much of the property (t-posts, trellising, pots, soil, etc.) w[as] literally intertwined with the marijuana plants that were being eradicated [.]" *See id*. at 32. Defendants attach photographs depicting the trellising and "pots with marijuana plants in them." *Id*. (citing Exhibits 12 and 13 (photographs "introduced by Plaintiff during the deposition of Allan Bray" which "purport to show the property just after the law-enforcement operation"). Defendants further rely on the testimony of Allan Bray, an employee of Plaintiffs. Defendants argue that "the county workers only interacted with the posts and trellising in order to take down the marijuana plants." *Id*. at 33 (citing Dep. of Allan Bray [Doc. No. 192-4] at 2-3).

Mr. Topkov wholly fails to respond to this dispositive Fourth Amendment inquiry. Instead, he conclusorily asserts that Defendants' personally participated because they "set the wheels of the alleged constitutional violation in motion by mapping out the raid which clearly exceeded statutory authority to, at most, destroy Mr. Topkov's marijuana even before Mr. Wheeler obtained the Search Warrant." *See* Doc. Nos. 202 and 203 at 35-36. But Mr. Topkov provides no legal analysis or evidentiary support for this assertion. And

Mr. Topkov's reliance on forfeiture authority under state law, as discussed supra, is misplaced.

Even if the Court were to assume that by authorizing the summary forfeiture *of the marijuana*, Defendants knew or should have known that property integral to the grow operation would be damaged, Mr. Topkov comes forward with no evidence to show the damage was *excessive*. Damage that is excessive, for Fourth Amendment purposes, "implies something more than accidental or incidental injury to property in the course of working within the parameters of a lawful search warrant." *Cybernet*, 954 F.3d at 170. And officers need not choose the least destructive means in their search; the means just must simply be objectively reasonable. *Id*. at 169-70.

Mr. Topkov has shown no gratuitous damage to his property. Instead, the record shows property damage incidental to execution of the search warrant and eradication of the marijuana.

To that end, Mr. Topkov provides no *specific* evidence of what property was even destroyed or the nature and extent of any damage to such property. The only evidence comes in the form of his Declaration in which he states the following:

- The individuals and operators of the earth moving machines destroyed my farm, ransacked and damaged by real and personal property, and destroyed my business.

- These individuals cut, ripped out, scrapped (with the earth moving machines) my real and personal property.

- The earth moving machines dug ditches and destroyed the above ground and below ground irrigation systems and electrical systems to my farm.

*See* Topkov Decl. [Doc. No. 202-2] at 3, ¶ 17.[26]

The conclusory and speculative nature of the statements is problematic.  They are more akin to allegations than specific facts showing a genuine issue for trial.  *See Modoc Nation v. Bohl*, No. 24-5135, 2025 WL 2814397 at *4 (10th Cir. Oct. 3, 2025) (party could not rely "on his own self-serving declaration because it averred in conclusory fashion that his actions all occurred within the scope of his official duties" (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (recognizing that "conclusory and self-serving affidavits are not sufficient" to survive summary judgment, and rejecting three affidavits as conclusory because they failed to provide "any factual bases for the inference" asserted)); *see also Brown v. City of Colo. Springs*, 709 F. App'x 906, 912-913 (10th Cir. 2017) (although the court reviews the evidence in the light most favorable to the nonmoving party the court need not make unreasonable inferences that are unsupported by the record).

---

[26] Mr. Topkov submitted a second Declaration [Doc. No. 249-1] but it too, is rather bare bones. He states: "[i]n executing the search warrant Defendants damaged my land in digging pits, gouging trenches, and scraping my land with earth moving machines" and "Defendants damaged several areas of my home including, but not limited to, doors, windows, window screens, and window frames."  *Id*. at 1, ¶¶2-3.  He further states that other property damaged included: "(1) electrical systems; (2) above ground irrigation systems; (3) below ground irrigation systems; (4) planted soil; (5) a lock on the gate to the property; (7) [sic] security cameras; and (8) [sic] household furniture and goods, including, but not limited to, cabinets, a bed mattress, a bed frame, dishes and glassware."  *Id*., ¶ 4.

Notably, it is undisputed that Mr. Topkov was not present at the property during the search. Thus, he could not have personally observed the destruction of the property as it happened. And he otherwise makes no effort to demonstrate that any such destruction was excessive or unreasonable under the circumstances.[27] Mr. Topkov's statements, therefore, are relevant only to the extent he purports to show the nature and extent of the property damaged. Even then, however, he provides no real factual support for such damage. Mr. Topkov has provided no documentary evidence such as photographs, receipts for repairs to his property, an itemization of damages or the like.[28]

The Court finds that Mr. Topkov's Declaration is insufficient to demonstrate a violation of his Fourth Amendment rights. As the Court has stated, the fact that property was damaged during the search, without more, does not establish that the search was excessive. *See, e.g., Parker v. Fantasia*, 425 F. Supp.3d 171, 189 (S.D.N.Y. 2019) (plaintiff's allegations that Defendants "damaged and seized" his property and "destroyed" his home, "merely alleged that damage occurred, which is insufficient to establish that defendant acted unreasonably or maliciously during the search"); *see also id*. (collecting cases finding summary judgment in favor of defendants proper on Fourth Amendment

---

[27] Indeed, the record is somewhat scant as to testimony from any on-the-scene person regarding the extent of property damaged in relation to the manner by which the warrant was executed.

[28] Nor does he ever identify any person who did actually engage in the destruction of his property. His vague reference to "individuals" is insufficient at the summary judgment stage.

claims of excessive damage to property where a plaintiff has not produced documentary evidence or sworn testimony attesting to specific damages to support his allegations).[29]

Moreover, Mr. Topkov has failed to refute Defendants' evidence that they did not witness any of the non-marijuana property being destroyed, nor did they direct its destruction. Mr. Topkov's claim is essentially based on his contention that Defendants should have known property integrally related to the marijuana grow operation would be destroyed if the marijuana were eradicated. But that contention fails to demonstrate the excessiveness of the search and sounds more in tort-law than in Fourth Amendment jurisprudence.

### *Dissipation of Probable Cause*

Finally, Mr. Topkov argues that in the course of the search, Wheeler "chose to ignore the electronic evidence" that ERL had a valid OBN registration. *Id.* Mr. Topkov appears to contend that the "electronic evidence" dissipated any probable cause and made any damage to property after that time unreasonable and excessive. In making this argument, Mr. Topkov provides no time line or otherwise attempt to describe the property alleged to

---

[29] Mr. Topkov also contends the search warrant did not "authorize any digging on the property" or "expressly authorize law enforcement to destroy irrigation lines or electrical lines on Mr. Topkov's property." See, e.g., Doc. No. 202 at 16, ¶¶ 19, 20. But Mr. Topkov fails to cite any legal authority to support his argument that such a requirement exists. As one court has explained: "The Fourth Amendment requires that a warrant particularly describe the place to be searched and the person or things to be seized" but [n]othing in the Amendment's text adds that the warrant must also describe the precise manner in which it is to be executed, and no binding decision requires a search protocol before a warrant may be issued." *United States v. Okafor*, No. CR 23-116 (JDB), 2024 WL 4263928, at *4 (D.D.C. Sept. 23, 2024) (cleaned up); *see also United States v. Merrell*, 842 F.3d 577, 581 (8th Cir. 2016) ("Although the Fourth Amendment requires a warrant to describe particularly the things to be seized, there is no requirement that search warrants include a specification of the precise manner in which they are to be executed." (cleaned up)).

have been destroyed after the "electronic evidence" was shown to Wheeler. This failure, alone, renders any claim for damages speculative.[30]

In any event, the record shows Wheeler did not ignore this electronic evidence. Instead, it is undisputed that he stopped the search, called OBN and sent the image of the registration to it. Initially, OBN told Wheeler that it appeared to be fraudulent. And, as noted, Mr. Topkov's own employee, Mr. Guilfarro told Wheeler that he thought the image looked "suspicious."

As the Tenth Circuit has instructed, at least in the context of probable cause to arrest, "not all new evidence" dissipates probable cause and "even a 'plausible explanation' does not require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1221 (10th Cir. 2020) (cleaned up). Instead, the probable cause which formed the basis of the arrest must be "*unfounded*." *Id*. (emphasis added); *see also United States v. Dalton*, 918 F.3d 1117, 1127-28 (10th Cir. 2019) (recognizing that "probable cause becomes stale when new information received by the police nullifies information critical to the earlier probable cause determination before the warrant is executed"); *cf. Harte*, 864

---

[30] Moreover, as to the destruction of any personal property unrelated to the marijuana grow operation, Mr. Topkov makes no temporal showing that such property was destroyed *after* the electronic evidence was presented to Wheeler. To the contrary, according to Wheeler's undisputed statements, the search began with a clearing and securing phase, during which structures were cleared and individuals detained. Mr. Guilfarro was one of the individuals detained. It was not until after the persons detained had been released from handcuffs that Mr. Guilfarro told Wheeler that he believed the operation was legal. Thus, the only reasonable inference, uncontroverted by Mr. Topkov, is that any destruction of personal property during the clearing of the structures had occurred prior to Wheeler being provided the image of the OBN registration. *See* Wheeler Stmt. [Doc. No. 191-1] at 3-4, ¶¶ 15, 18-19; *see also* Guifaro Dep. [Doc. No. 191-2] at 37-39.

F.3d at 1184 (Phillips, J., concurring) (finding probable cause dissipated when officers executed the search warrant and learned that the suspected marijuana grow operation did not exist; there was no sign or remnant of a grow operation but only tomato plants and other vegetables).

As set forth, OBN called Wheeler back approximately ten minutes later and advised Wheeler that the property did have a proper registration.  At that time, Wheeler immediately stopped the search at that time.  Under these circumstances, Mr. Topkov has not shown that Wheeler violated his Fourth Amendment rights based on any dissipation of probable cause.

In sum, the Court finds that Mr. Topkov has failed to demonstrate that Wheeler or Grubb violated his Fourth Amendment right to be free from an *excessive* search.  While the Court finds Defendants are entitled to qualified immunity on this basis, the Court nonetheless further analyzes whether Mr. Topkov can satisfy the clearly established law prong of the qualified immunity analysis.

### B.    Clearly Established Law

Defendants also move for summary judgment arguing that no clearly established federal law provides for the recovery of monetary damages based on injury to derivative contraband during the execution of a search warrant.  Defendants argue that "federal courts cannot grant relief that endorses illegal activity" and, therefore, "it is far from 'clearly established' that a federal litigant may recover damages from a state officer for what is undisputably illegal derivative contraband under federal law."  *See, e.g.*, Doc. No. 191 at 28.  Defendants further argue that "it is far from 'beyond debate' that every reasonable

28

officer would know that when summarily forfeiting contraband marijuana, the marijuana must be carefully disentangled from the trellising and supporting t-posts, and that the potted marijuana must be carefully removed from the plastic pots so that the pots may be preserved." *Id*. at 31.

Mr. Topkov does not address these arguments head on. Instead, Mr. Topkov argues that seizure is a prerequisite to forfeiture and that the search warrant in this case did not authorize Defendants to "seize and *permanently forfeit* real or personal property." *Id*. at 20, 21 (emphasis in original). Again, Mr. Topkov impermissibly conflates due process rights associated with the forfeiture of property with the claim at issue here – the reasonableness of the search and seizure under the Fourth Amendment.

For the applicable law to be clearly established "there must be prior Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, that would have put an officer in the officers' position on notice that they were violating the [plaintiff's] Fourth Amendment rights." *Burke v. Pitts*, 157 F.4th 1326, (10th Cir. 2025) (cleaned up). "A prior decision must sufficiently address the prohibited conduct so that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. (internal quotation marks and citations omitted)). Thus, a right is "clearly established" when the precedent encompasses "materially similar conduct" or applies with "obvious clarity to the conduct at issue. *Id*. (internal quotation marks and citations omitted)). In other words, [i]f every reasonable official would understand that what he is doing violates the right, then that right is clearly established. *Fuqua v. Sante Fe Cnty. Sheriff's Office*, 157 F.4th 1288, 1304 (10th Cir. Nov. 4, 2025) (cleaned up).

Mr. Topkov cites no case in which the Supreme Court or the Tenth Circuit has addressed damage to property integral to a marijuana grow operation in the context of a Fourth Amendment claim. Nor has he cited any case addressing the right to recover damages for contraband (including derivative contraband) seized during a search in the context of a § 1983 claim alleging a Fourth Amendment violation.

In arguing that Defendants should be subjected to supervisory liability for setting in motion the destruction of such property, Mr. Topkov relies on the following cases as the governing clearly established law: *Harte v. Bd. of Comm'rs of Cnty. of Johnson, Kan.*, 864 F.3d 1154 (10th Cir. 2017);[31] *Bowling v. Rector*, 584 F.3d 956 (10th Cir. 2009); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); and *Fogarty v. Gallegos*, 523 F.3d 1147, 1162-63 (10th Cir. 2008).[32] "[I]in the context of [a] supervisory-liability claim . . . [a plaintiff] must show that . . . clearly established law [would] have put a reasonable official in [the supervisor's] position on notice that his supervisory conduct would violate [the plaintiff's] constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (quotation and internal quotation marks omitted). The cases cited by Mr. Topkov do not involve "materially similar conduct" or apply with "obvious clarity to the conduct at issue" with respect to Mr. Topkov's Fourth Amendment claim. *Burke*, 2025 WL 3073635 at *14 (citation omitted).

---

[31] Notably, *Harte* involved a decision that consisted of three separate opinions, none of which are controlling.

[32] Mr. Topkov's reliance on these cases is inapposite to the extent he cites them to support the additional claims raised in his responses that have not been pled in the FAC.

Indeed, in *Harte*, the plaintiffs did not even allege damage to property or that their house was ransacked. *Id.*, 864 F.3d at 1189 (Phillips, J.). And in *Bowling*, the Tenth Circuit expressly noted that the plaintiff's "destruction of property" claim was not at issue in the appeal. *Id.*, 584 F.3d at 959, n.1.

*Schneider* is aimed at the issue of causation. Mr. Topkov cites *Schneider* along with *Fogarty* to support his contention that Defendants' conduct caused the constitutional violation of his rights because such conduct "set in motion" the destruction of the marijuana and other property. *Id.* at 768-69. But even were the Court to assume the causation element is satisfied, the issue here is whether materially similar conduct is at issue. *Schneider* does not suffice because the conduct at issue there was supervisory liability for a subordinate officer's rape of the plaintiff. And in *Fogarty*, the court addressed whether a supervisor had indirect and/or supervisory liability for the plaintiff's alleged unlawful arrest and the excessive use of force through deployment of tear gas and projectiles. Accordingly, the Court finds that Wheeler and Grubb are entitled to qualified immunity under the clearly established law prong of the analysis as to Mr. Topkov's Fourth Amendment claim premised on supervisory liability.

## VI.    <u>Conclusion</u>

Although the Court finds Defendants are entitled to summary judgment, the Court does so with some reluctance given the alleged scope of damage to Mr. Topkov's property – alleged damage that flowed from the communication of misinformation from the OBN to Wheeler. That said, a review of the record in this case fails to establish a violation of Mr. Topkov's Fourth Amendment rights. Moreover, the fact that marijuana grow

31

operations remain illegal at the federal level, but are legal at the state level in limited and regulated circumstances, leaves the legal contours of rights associated with such operations largely untraversed and the scope of protections afforded thereto largely unresolved.

Accordingly, for the reasons set forth, the Motions for Summary Judgment of Defendants William Wheeler and Allan Grubb [Doc. Nos. 191 and 192] are GRANTED and Defendants are entitled to judgment as a matter of law in their favor on Plaintiffs' Fourth Amendment claim on grounds of qualified immunity. A separate judgment shall be entered.

IT IS SO ORDERED this 15th day of December, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE